CITY OF SALISBURY, to the Use of M. W. RAFTER & L. N. SANDERS, Partners Doing Business Under the Firm Name of RAFTER & SANDERS, v. T. P. SCHOOLER, W. R. TINDALL, Trustee, and THE PEOPLES BANK OF SALISBURY, Appellant.—53 S. W. (2d) 267.

Division Two, September 28, 1932.

*Thomas P. Schooler* and *Gilbert Lamb* for appellant.

*Clarence S. Palmer* for respondent.

WESTHUES, C.—Plaintiffs filed this suit to enforce the payment of a special tax bill, issued by the city of Salisbury, Missouri, in the sum of $26.50, against lot four, block five, Peters first addition, located in the city of Salisbury, Missouri, in favor of M. W. Rafter and L. N. Sanders in payment of certain street improvements,' made by Rafter and Sanders under contract with said city.

The answer of defendant alleged that Section 8501, Revised Statutes 1919, now Section 7050, Revised Statutes 1929, under which section the city surfaced the streets and a tax bill was issued, was void and in violation of Section 28, Article 4, of the Constitution of Missouri. Defendant also contended that the section referred to and the proceedings had thereunder, as a basis for the tax bill, were void and in violation of defendant's rights, under the Fifth and Fourteenth Amendments of the Constitution of the United States and Section 30 of Article 2 of the Constitution of Missouri, in that Section 8501 permits the taxation of defendant's property without due process of law.

. Defendant's answer then alleged that the proceedings of the board of aldermen were materially defective in that no ordinance or resolution was passed declaring the improvement to be necessary; that the ordinance number 289, providing for the improvement, did not specify the time and terms under which the contract should be let; that no estimate of the cost was filed by any officer of the city; that the plans and specifications, filed with the city clerk, as the basis of receiving bids and of doing the work, were so indefinite and uncertain as to be void. Defendant then alleged that in addition to

ordinance number 289, creating district number 2, four other and similar ordinances were passed establishing districts numbers 1, 3, 4 and 5, covering a large portion of the streets of the city of Salisbury; that thereafter the city let one contract for the improvement of the streets of the five districts and did not let a separate contract for each district, as required by Section 7050, supra; that the work was not done in substantial compliance with the plans and specifications, nor the contract completed within the time required; that the assessment against the defendant's property was not assessed in the proportion that the linear feet of each lot fronting on the streets, bore to the total number of linear feet within district number two and that the assessment was in excess of defendant's proportionate part of the cost. Defendants also contended that under Section 8501 the city was without authority to improve the streets, with gravel or other road building material, as was done in this case.

 As we shall presently see, the contentions made by defendant in this case have been fully answered in previous cases decided by this court. Section 8501, supra, here in controversy, giving to cities of the fourth class the power to make certain street improvements and prescribing the procedure therefor is identical with Section 8301, Revised Statutes 1919, granting to cities of the third class like powers. Both sections were first enacted by the Legislature in the year 1915. [See Laws 1915, pp. 359 and 361.] These sections were amended by the Laws of 1919 at pages 572 and 575 and are now Sections 6814 and 7050, Revised Statutes 1929. Section 6814 was further amended by the Laws of 1921, First Extra Session, page 112. In Asel v. City of Jefferson, 287 Mo. 195, 229 S. W. 1046, the validity of Section 8301 was upheld by the Supreme Court En Banc. In that case, as here, the contention was made that the section was unconstitutional because the subject of the act was not clearly expressed in the title thereof. The opinion in the Asel case, supra, treats this question at some length and points out that the Legislature could not have been misled by the title of the act. The title to Section 8501 in this case is identical with that of Section 8301 in the Asel case. [Laws 1919, pp. 575, 572, 573.] The title here in controversy reads:

"Section 1. Sprinkling and oiling of streets, how paid for.— That an act entitled 'An act to amend chapter 84, article 5, of the Revised Statutes of the State of Missouri, 1909,' in relation to municipal corporations as it appears in the Laws of Missouri, 1915, at page 361, and approved March 23rd, 1915, be and the same is hereby repealed and a new section relating to the same subject-matter be enacted in lieu thereof to be known as Section 9402a, to read as follows:" In the Asel case, supra, the court said:

296

"The mere reference, in the title of the Act of 1919, to the Act of 1915, without other description of the subject-matter, under the rulings of this court gave sufficient notice that the new section to be enacted would deal with the same subject as contained in the section of the Act of 1915 to be repealed. . . . They would thereby be specifically informed as to the general subject and nature of the legislation sought to be enacted. The caption or headnote to the Act of 1915, having reference to the 'oiling and sprinkling of streets,' they would readily realize that the subject of the new section to be enacted would necessarily relate to the care and maintenance of streets, or a subject closely related thereto. And the body of the Act of 1919, continuing to treat of the 'oiling and sprinkling' of streets, together with the kindred and germane subjects of 'repairing, surfacing and resurfacing' thereof, manifestly it cannot be effectively urged that the Legislature was misled."

We adhere to and reaffirm the holding in the Asel case on the point in question.

■ The next contention, made by defendant, is that Section 8501 is unconstitutional for the reason that it permits assessment to be made for street improvements without requiring a notice to the interested property owners, or a hearing by the property owners before authorizing improvements to be made and for that reason the section violates the due process clauses of the Federal and State Constitutions, supra. This same contention has been before this and other courts on various occasions and has invariably been decided adversely to defendant's contention. It has been uniformly held that notice or a hearing is not necessary to a valid assessment against real estate for the payment of street improvements so long as the property owner has the opportunity, when the payment of tax bills are sought to be enforced in a court of law, to there set up whatever defense he may have against the validity of the assessment. In Mudd v. Wehmeyer, 323 Mo. 704, 19 S. W. (2d) 891, l. c. 895 (7) this court said:

"Respondents insist that, in order to conform to the due process of law provisions of the Federal and State Constitutions such notice and opportunity for hearing must precede the ordering and doing of the work. Appellants contend that these constitutional requirements are satisfied when the tax in question is collectible or enforceable only by a suit or judicial proceeding in which the property owner must be served with process, and may assert any defense that would show the assessment invalid. We agree with appellants' contention. This question has been so determined by both the United States Supreme Court and by this court."

See, also, Bates v. Comstock Realty Co., 267 S. W. 641, 306 Mo. 312; Davidson v. New Orleans, 96 U. S. 97, 24 L. Ed. 616 and Haeussler Inv. Co. v. Bates, 267 S. W. l. c. 632, 306 Mo. 409.

Defendant next insists that the city had no authority, under Section 8501, supra, to improve streets, as in this case, by placing gravel upon the streets to the extent of a thickness of four inches, even though the cost thereof did not exceed the limit prescribed by the statute. To state defendant's position accurately we quote from his brief:

"We believe the word surface, as in the days of Pathagoris, used as a noun, still has but two dimensions, length and breadth, without regard to thickness, and used as a verb, meaning to make smooth, and not to put anything upon something else, i. e., to lay four inches of small stones or crushed rock upon a public roadway, thereby making a hard surfaced roadway for public use. This cannot be done lawfully except under Section 8510, Revised Statutes 1919, which said section gives the owners of lots in cities of the fourth class the right of remonstrance, which is denied them under Section 8501, Revised Statutes 1919."

We are of the opinion that the Legislature never intended to give the words "surface" and "resurface" such a narrow and restricted meaning. Such construction would be detrimental to the interest of the property holders of the cities. It would give the city authorities the power to assess a tax against real estate to the extent of sixty cents per front foot per year and at the same time in an indirect way prohibit the city from making any improvement of real substance or value therefor. In determining the meaning of a word we must always keep in mind the subject-matter under discussion. When lawyers speak of a "case" it is usually, though not always, with reference to a law suit. When the brewers of old spoke of a "case" the word had an entirely different meaning. So in ascertaining the meaning of the word "surface" we must give some consideration to the subject-matter under discussion. We find in 40 Corpus Juris, under the title, "Mines and Minerals," at page 755, the word "surface" to mean: "The nonmineral portion of land, the portion which covers and envelops the minerals . . . that part of the land which is capable of being used for agricultural purposes." [Ramage v. South Penn. Oil Co., 31 A. L. R. l. c. 1514, etc.; Myher v. Myher, 224 Mo. 631, 123 S. W. 806.] In Section 8093, Revised Statutes 1929, we find the following definition of the term "hard surfaced road:" "A road surfaced with concrete, comparable types, macadam, properly bound gravel or the equivalent of properly bound gravel." This definition of the word surface, by the Legislature, when the term is used with reference to roadways, we believe to be correct and in harmony with the general understand-

ing of the meaning of the word "surface" when used with reference to the improvement of streets and roadways. When a roadway is spoken of as being hard surfaced it imparts to the mind that the roadway has been improved with some hard wearing material and that the surface includes the entire layer of gravel, macadam, or other substance of which the hard surface of the roadway is constructed. Section 8501, supra, does not restrict the city to the use of oil and water, as contended for by defendant, but permits the city authorities to surface and resurface the streets with any road building material they may deem necessary and proper, provided the cost does not exceed sixty cents per front foot.

The contentions that the proceedings of the board of aldermen, upon which the tax bill here in question was issued and the improvements made, were so defective as to render the tax bill void, are without merit. Section 8501 does not require a resolution or ordinance, by the board of aldermen, declaring the improvement necessary as does Section 8510. Section 8501 reads: "The board of aldermen shall have power within the city, by ordinance, to cause the streets . . . to be surfaced." An ordinance was passed ordering the work to be done. Neither does this section require an estimate of the cost of the improvement to be made and filed with the city clerk. The section itself limits the cost to sixty cents per front foot.

The board of aldermen passed five separate ordinances, creating five districts for the purpose of surfacing the streets therein. We are dealing with district number two. The notice to bidders made reference to each district by number and to the ordinance number creating the district thus: "District No. Two as provided by Ordinance No. 289." The plaintiff in this case submitted one uniform bid for the work to be done and material furnished in all districts. Plaintiffs' bid was accepted and plaintiffs entered into one contract with the city, which provided in part as follows:

"It is understood that we are to receive payment for the work herein covered on each project in the form of special tax bills issued against the property benefited and city warrants for intersections. Settlement will be made upon the acceptance by the city of any entire district. The tax bills will be issued in accordance with the laws of Missouri covering this class of work."

The tax bill reads in part:

"T. P. Schooler.
"State of Missouri.
"Salisbury Special Tax Bill.

"No. 86. Issued under Ordinance No. 296.

"This is to Certify, that the following described land, exclusive of improvements, situated within the corporate limits of the City of

Salisbury, Chariton County, and State of Missouri, to-wit: Lot 4, Blk. 5, Peters 1st Addition, has been duly assessed and charged with the sum of twenty-six dollars and fifty cents.

"AS A SPECIAL TAX

to pay its proportionate share of the cost of surfacing the roadway of certain streets in the city of Salisbury provided for by Ordinance No. 289, entitled 'An Ordinance establishing a District, to be known as District No. 2 for the purpose of surfacing the roadway of parts of certain streets in the City of Salisbury, Missouri, and providing for the surfacing of said roadways and the payment of the cost thereof, approved on the 8th day of August, 1928, and the contract for said work." It is evident that while only one contract was entered into for the improvement of the streets of all five districts the cost of each district was, by the contract, the tax bills and the ordinance authorizing the tax bills, kept separately and the property of the defendant was assessed only for its proportionate part of the cost of improving the streets of district number two. It has been held that such a course of procedure does not invalidate the tax bills. [Williams v. Hybskmann, 311 Mo. 332, 278 S. W. 1. c. 381 (12).]

The tax bill was offered in evidence and, under the statute, was prima-facie evidence of the liability of the property charged therewith. No evidence was offered in support of the other allegations contained in the answer. We find the proceedings of the board of aldermen with reference to the surfacing of the streets in district number two to be in substantial compliance with the procedure prescribed by Section 7050, supra. The tax bill issued to plaintiffs in payment of the work done is a valid lien against defendant's property.

The judgment of the circuit court is affirmed. *Cooley* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C. is adopted as the opinion of the court. All of the judges concur.