Marshall BRYANT et al., Plaintiffs-Respondents,

v.

CITY OF MOREHOUSE, a municipal corporation, Defendant-Appellant.

No. 9348.

Missouri Court of Appeals, Springfield District.

May 30, 1973.

No appearance, for plaintiffs-respondents.

Robert A. Dempster, Joseph P. Fuchs, Dempster, Yokley & Fuchs, Sikeston, for defendant-appellant.

TITUS, Chief Judge.

Morehouse, a city of the fourth class, was "perpetually enjoined and restrained under Ordinance No. 293" by the Circuit Court of New Madrid County "from paving Beech Street from Madison Street to Benton Street." It appeals and the basic question is whether the city was required to proceed under § 88.700 RSMo 1969 or § 88.811 RSMo 1969, V.A.M.S. The city

concedes "it has in no way complied with" § 88.700. Consequently, if that statute is applicable, the judgment is to be affirmed. On the other hand, if § 88.811 governs the situation, we have the further task of deciding whether the city satisfied the requirements of that law.

As it now interests us, § 88.811 empowers the "legislative body of any city of the third [or] fourth class . . ., by ordinance, in all cases where the cost does not exceed two dollars per front foot per annum upon the property abutting upon any street . . ., to cause the streets . . ., or any part thereof, to be sprinkled, oiled, repaired, surfaced and resurfaced, and the cost thereof to be . . . defrayed by a special tax to be assessed . . . on the adjoining property fronting or bordering on the streets . . . where such [work] is proposed to be done, in proportion that the linear feet of each lot fronting or bordering on the street . . . bears to the total number of linear feet of all the property chargeable with the special tax . . . . The above work may be done by said municipality . . . or may be contracted for annually . . ., and the municipality shall be divided into convenient . . . districts for the above purpose . . . ; provided, that in no case shall the provisions of this section apply where the cost of such improvement shall exceed two dollars per front foot per annum upon the property abutting upon any street." This section concludes with the provision that if the legislative body so desires and specifies, the improvement costs "may be paid out of the general revenue fund of the municipality or other funds which the municipality may have for such purposes . . . in whole or in part."

Section 88.700 recites that "[w]hen the board of aldermen [of fourth class cities] deem it necessary to pave, macadamize, gutter, curb . . . or otherwise improve any street . . ., or any part thereof . . . for which a special tax is to be levied," the board by resolution, shall declare the work to be necessary and shall publish

the resolution in the manner specified. The section permits "a majority of the owners of the property liable to taxation" to protest or remonstrate against the improvement and allows the board to proceed with the improvement only if no protest is made "within ten days from the date of the last [newspaper] insertion of the resolution."

On April 3, 1972, the Board of Aldermen of Morehouse passed Ordinance No. 293. It declared it was "necessary to bring to grade, improve, pave, surface and resurface" 20 designated portions of certain city streets "listed and attached to the contract" which the mayor was authorized to execute and which was expressly made a part of the ordinance by reference. Before this was done, a majority of the owners of property liable to taxation on Beech Street from Madison to Benton (some of whom are plaintiffs-respondents) filed a petition protesting the paving to be done in that area. However, as the ordinance title recited that the board was proceeding "in the manner provided by Section 88.811," [1] the board permitted the remonstrance to go unheeded. Both the ordinance and the agreement stated "that the Board of Aldermen may at its discretion add to or delete certain of the said streets as it may deem necessary and proper from time to time." According to "Addenum [sic] No. 1" to the contract (which the mayor signed as authorized), the cost of improving the 20 designated street segments varied from $1.40 to $1.78 per square yard and all "wings, radii.'s or other extra work at intersection will be paid for at $1.60 per sq. yd except a wing type radii. of 6' or less will not be measured or included for payment." Addendum No. 1 stated "[t]he cost of the above mentioned work estimated to be $51,682.89 plus any additional work authorized by the City;" the work to be done on "Beech Street—from Madison to Bates" (which contained the area from Madison to Benton), was "to be 20' wide (1½"

thick) at a cost of $1.40 per sq. yd." Sections 7 and 8 of the ordinance read: "Upon completion of the said work, the Mayor of said City shall report to the Board of Aldermen the total cost of repairing, surfacing, and resurfacing of said streets . . ., the total number of linear feet of the property fronting or bordering thereon, the total number of linear feet of the surfacing and resurfacing altogether, and the proportionate share of such cost chargeable against each lot, tract, or parcel of land fronting or bordering said streets in accordance with the provisions of this Ordinance. . . . Upon the filing of such report . . ., the Board of Aldermen shall levy and assess a special tax issuing special tax bills against the property fronting or bordering upon and along said streets in an amount not exceeding $2.00 per front foot; and that the City shall pay the balance of the cost thereof."

In arriving at the order reproved by the city, the trial court did not determine if § 88.700 or § 88.811 was applicable to the proposed street improvements—it contented itself with the finding that the city had not complied with either. Plaintiffs-respondents filed no briefs in this court which is their privilege. Nevertheless, such a practice is "neither helpful nor commendable" [Holman v. Fincher, 403 S.W.2d 245, 249 (Mo.App.1966)] as it leaves the city's brief unchaperoned by any points or citations of authority favorable to sustention of the ruling nisi.

Perusers of the two involved statutes will readily descry that the provisions of § 88.811 "are not so many or so strict" as those in § 88.700. City of Houston v. Kelly, 105 S.W.2d 53, 56 (Mo.App.1937). Inter alia, § 88.700 requires a resolution of necessity and the newspaper publication thereof; it also permits of a remonstrance. Such requirements do not repose in § 88.811 which allows the board of aldermen to proceed, more or less ex parte, with im-

[1] Which recitation doesn't necessarily make it so.

provements in divided districts provided "the cost does not exceed two dollars per front foot per annum upon the property abutting upon any street." City of Salisbury to Use of Rafter v. Schooler, 331 Mo. 291, 298, 53 S.W.2d 267, 270 [5], 84 A.L.R. 1153, 1157 (1932). The reason for the difference, as observed in City of Houston v. Kelly, supra, is that when the improvement cost exceeds $2 per front foot per annum, "more definite and specific steps must be taken than under the cheaper work and improvements provided for under" § 88.811. In fine, the "controlling factor" to consider in deciding whether § 88.700 or 88.811 is applicable, is whether the cost of the improvement is more than $2 per front foot per annum. If the cost exceeds the limit prescribed by § 88.811, then § 88.700 must be satisfied; if not, § 88.811 controls. Dickey v. City of Poplar Bluff, 188 S.W. 2d 672, 675 (Mo.App.1945). In addition, it is well to note the provisions of § 88.811 shall apply in no case "where the *cost of such improvement* shall exceed two dollars per front foot per annum upon the property abutting upon any street,"[2] and that the *cost* of an improvement is an entirely different gauge than the amount which may be arbitrarily or otherwise charged against each tract with the city paying the balance of the total cost. Had the legislature intended that § 88.811 apply to situations where the balance of the improvement cost not paid out of general revenue or any grant of funds was to be defrayed by special tax bills not exceeding $2 per front foot, it would have been a facile matter for it to have done so. Cf. § 71.290 RSMo 1969, V.A.M.S.

■ A review of what has been said anent Ordinance No. 293 reveals that the cost of improving the 20 street segments enumerated in the contract was to be finally computed in one lump sum. The ordinance directed the mayor, "[u]pon completion of the said work" to report "the *total*

cost of [improving] said streets . . . the *total* number of linear feet of the property fronting or bordering thereon, the *total* number of linear feet of surfacing and resurfacing altogether, and the proportionate share of such cost chargeable against each lot . . . fronting or bordering said streets." And it was from these totals that the board of aldermen would compute the amount of the special tax bills (not to exceed $2 per front foot) and the balance to be paid by the city. On the record submitted, it is impossible for us to calculate what the cost per front foot per annum would be (i. e., whether it would exceed $2 per front foot vel non). By referring to "the balance" remaining after accounting for the special tax bills, the ordinance itself suggests the "cost of such improvement" (as opposed to the specific charge to be made against each tract) would exceed the limit imposed by § 88.811. If this be so, then the board of aldermen had no right to proceed under § 88.811; they should have satisfied the requirements of § 88.700 which they admittedly did not do.

If the city could proceed with the street improvements under § 88.811 (which we simply assume arguendo), the law requires (by use of mandatory "shall") that the municipality be divided into convenient districts and that the contract for each district be let separately. "The underlying purpose for the creation of special taxing districts is to attain a constitutional balance in relationship to benefits conferred for burdens imposed" (63 C.J.S. Municipal Corporations § 1361 a., p. 1101), or so that an unbenefited district, or one not equally benefiting from improvements made in another, will not be burdened for a benefit not conferred. Ordinance No. 293, as the trial court found, did not divide the city into convenient districts nor let separately a contract for each district. To avoid the effects of this truth the city relies on City of Houston v. Kelly, supra, 105 S.W.2d at

2. All emphasis herein is ours.

**300**

55 [1]. We believe its reliance is ill placed. In the City of Houston case the only improvement involved was on "Grand Avenue from the North line of Walnut Street to the North line of Chestnut Street" and the court of appeals held that the provision in § 88.811 relative to dividing the municipality into districts "does not necessarily mean that the entire city should be divided into districts, but that *the parts of the city that are to be improved should be in districts.*" E. g. The City of Sikeston in Schreck v. Parker, 388 S.W.2d 538, 540 (Mo.App. 1965), enacted four ordinances creating four districts; the municipal legislative body in Dickey v. City of Poplar Bluff, supra, 188 S.W.2d at 672, "by Ordinance . . . divided the city into districts for that purpose;" in Asel v. City of Jefferson, 287 Mo. 195, 200–201, 229 S.W. 1046, 1047 (banc 1921) the city counsel "passed an ordinance dividing the city into six . . . districts;" and in City of Salisbury to Use of Rafter v. Schooler, supra, 53 S.W.2d at 268, the board of aldermen passed five ordinances to establish five separate districts under what is now § 88.811. In the instant case the 20 street segments that were to be improved in Morehouse were not relegated, individually or collectively, to any district and the transcript on appeal does not contain information that would warrant us to assume that the 20 improvements (as opposed to the one improvement in City of Houston) could be reasonably and logically lumped together in a single benefit district or that those property owners on the segment whose improvement was figured at $1.40 per square yard would benefit from the improvement being performed elsewhere at $1.78 per square yard.

The city of Morehouse having complied with neither § 88.700 nor 88.811, requires affirmance of the judgment of the trial court. It is so ordered.

STONE, HOGAN and BILLINGS, JJ., concur.