**STATE ex rel. Kathleen DIEHL, Relator,**

v.

**The Honorable John R. O'MALLEY, Judge, Division 6, Circuit Court of Jackson County, Missouri, Respondent.**

**No. SC 84659.**

Supreme Court of Missouri,
En Banc.

Jan. 28, 2003.

Martin M. Meyers, Kansas City, for Relator.

Alok Ahuja, Rosalee M. McNamara, Gail A. Goeke, Robert W. McKinley, Kansas City, for Respondent.

John D. Lynn, St. Louis, for Amicus Curiae St. Louis Chapter of the National Employment Lawyers Association.

Howard C. Wright, Jr., Carl S. Yendes, Springfield, for Amicus Curiae Cities of Springfield, Kansas City and St. Joseph, Missouri and The MO Municipal League.

Jerry M. Hunter, St. Louis, Mark A. Jess, Kansas City, for Amicus Curiae Associated Industries of MO Greater K.C. Chamber of Commerce, MO Bankers Assn., MO Chamber of Commerce & Industry and The National Assn. of Manufacturers.

MICHAEL A. WOLFF, Judge.

Does Missouri's constitutional guarantee of a right to jury trial apply to an action for damages under the Missouri Human Rights Act?

Kathleen Diehl, plaintiff in the circuit court and relator here, seeks actual and punitive damages against her former employer, NASD Regulation, Inc. Her petition, which seeks damages only and not equitable relief, is based upon the human rights act's provisions prohibiting discrimination on the basis of age, sex, and retaliation for filing a charge of discrimination. Actual damages pleaded include lost wages and emotional distress.

Diehl's petition alleged that she had complied with the act's requirement of making her complaint first to the Missouri Commission on Human Rights. The commission, in accordance with section 213.111.1,[1] issued her a "right to sue" letter, upon her request, after her complaint had been pending before the commission for more than 180 days.

■ In the circuit court action, Diehl filed a motion for jury trial, which the respondent judge overruled. This Court issued its preliminary writ of prohibition, pursuant to its jurisdiction in art. V, sec. 4 of the Missouri Constitution.[2]

■ For reasons that follow, this Court holds that Diehl has a right under the Missouri Constitution, art. I, section 22(a), to have her Missouri Human Rights Act civil action, for damages only, tried by a jury. This Court's preliminary writ is made absolute.

**The Right of Trial by Jury**

Art. I, sec. 22(a) of the Missouri constitution provides that "the right of trial by jury as heretofore enjoyed shall remain inviolate; . . . ." Quite simply, the words of the provision is intended to guarantee a right, not to restrict a right. The choice of words, particularly the use of the words "remain inviolate," is a more emphatic statement of the right than the simply stated guarantee written some 30 years earlier as the 7th Amendment to the United States Constitution that ". . . the right of trial by jury shall be preserved, . . ."

■ Though the 7th Amendment does not apply to the states,[3] its use of the word "preserved" invites the same kind of historical analysis as the Missouri provision. The original Missouri Constitution of 1820 provided: "That the right of trial by jury shall remain inviolate." Article XIII, sec. 8. The 1875 Constitution added the phrase "as heretofore enjoyed," which appears to

---

1. All references are to RSMo 2000 unless otherwise indicated.

2. Prohibition is an appropriate remedy if a trial court improperly denies the right to a trial by jury. *State ex rel. Estill v. Iannone,* 687 S.W.2d 172, 175 (Mo. banc 1985).

3. *See City of Monterey v. Del Monte Dunes, at Monterey, Ltd.* 526 U.S. 687, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999).

keep the year 1820 as the point of reference. Based on precedents, the parties in this case agree that the year 1820 is the point of reference.

## The Historical Analysis

The historical analysis is an inquiry as to whether Diehl's civil action for damages is the kind of case that carried a right of trial by jury in 1820. The respondent trial judge, represented here by counsel for the defendant employer, argues that the right of jury trial only applies to specific claims that were recognized by the law in 1820 and not to actions—such as the claim under the human rights act involved here—that came into existence after 1820. The employer would limit jury trials to those specific claims triable in common law courts in 1820.

The right to trial by jury predates Missouri's statehood and has existed here from the time the United States acquired jurisdiction over the Louisiana Territory. The Louisiana Territory includes the area ceded by France to the United States in the treaty of 1803 that became the state of Missouri in 1821.[4] The first provision for the right to jury trial was enacted for the Louisiana Territory in March 1804. It provided for jury trials in civil cases if either party requested it. Mo. Terr. Laws 4, at 5 (1804). After establishment of the Louisiana territorial government, the territorial laws provided for jury trials in "all civil cases of the value of one hundred dollars ... if either of the parties require it." Mo. Terr. Laws 58, sec. 13. The provision for jury trial in the territorial laws pre-dates by over ten years the passage of the territorial statute in 1816 adopting the common law in the territory of Missouri.[5] From the status of the right as of 1820, the simple analysis is whether the action is a "civil action" for damages. If so, the jury trial right is to "remain inviolate."

A review of the cases since the state's Constitution of 1820 makes clear that the exceptions recognized for the right of jury trial are cases under the courts' equitable jurisdiction, and those claims that are adjudicated in administrative proceedings. The right to trial by jury exists in actions at law but not in actions in equity. *Jaycox v. Brune*, 434 S.W.2d 539, 542 (Mo.1968); *State ex rel. Willman v. Sloan*, 574 S.W.2d 421, 422 (Mo. banc 1978). An action that is equitable in nature, as viewed in historical perspective and with respect to the equitable remedy sought, does not come within the jury trial guarantee. *Hammons v. Ehney*, 924 S.W.2d 843, 846 (Mo. banc 1996);[6] *see*

---

**4.** Joseph Fred Benson, *Reception of the Common Law in Missouri: Section 1.010 as Interpreted by the Supreme Court of Missouri*, 67 Mo. L.Rev. 595, 596 (2002).

**5.** The common law reception statute is now codified as section 1.010. Benson, *supra*. The territorial law provisions on jury trials, enacted at the time the territory of Missouri was a federal enclave, reflect the 7th Amendment that made the jury trial right the norm after cessation of the civil law systems that were in effect during French and Spanish rule.

**6.** The enactment of modern civil codes, and later, rules of civil procedure, brought signifi-

cant problems with the proper interpretation of the right to a jury trial with the merger of law and equity in the courts. See, Robert W. Barrow, *"The Right to Trial by Jury in Civil Cases in Jurisdictions Where the Procedure at Common Law and in Equity Are Blended by Their Practice Codes,"* 7 St. Louis L.Rev. 227 (1922); Arthur J. Bohn, *The Right to a Jury Trial in Civil Cases in Missouri*, 20 St. Louis L.Rev. 165 (1935); Olin W. Burnett, *Effects of the Civil Code Upon Pleadings and Methods of Trial in "Civil Action" for Injunction and Damages*, 14 Mo. L.Rev. 161 (1949), and Thomas J. O'Neil, *Law or Equity: The Right to Trial by Jury in a Civil Action*, 35 Mo. L.Rev. 43 (1970).

*also Krummenacher v. Western Auto Supply Co.*, 358 Mo. 757, 217 S.W.2d 473 (1949); *Lee v. Conran*, 213 Mo. 404, 111 S.W. 1151 (1908).

The question can be posed in one of two ways: what is an action at law to which the jury trial guarantee applies, or conversely, what is an equitable action to which the guarantee does not apply? Given the pre-1820 guarantee of a jury in "civil cases," it may be most faithful to the origins of the jury trial right to consider the right as generally applicable, especially where the relief sought is the traditional common-law remedy of damages, and to treat equity cases as the exception.

 To answer the law-or-equity question, "we must first determine what the issue tendered by the pleadings is, and after doing so, we must then ascertain how that issue was triable before the adoption" of the constitutional jury trial guarantee. *Lee v. Conran*, 111 S.W. at 1153. In reviewing the cases from the past 183 years, it is quite clear that, ordinarily, a suit that seeks only money damages is an action at law rather than equity. *Bank of Missouri v. Anderson*, 1 Mo. 244 (1822); *Meadowbrook Country Club v. Davis*, 421 S.W.2d 769, 772 (Mo. banc 1967); *Jaycox*, 434 S.W.2d at 542; *Willman*, 574 S.W.2d at 422.

When examining whether a claim based upon a later-enacted statute or common law principle is of the kind that was tried by jury in 1820, the proper historical analysis dates back at least to *Briggs v. St. Louis & S.F. Ry. Co.*, 111 Mo. 168, 20 S.W. 32 (1892). *Briggs* involved a claim arising under a statute passed in 1885. This Court dealt squarely with the argument that a claim based on a statute enacted after 1820 was not an action to which the

jury trial provision applies. The constitutional right to a jury trial "is implied in all cases in which an issue of fact, in an action for the recovery of money only, is involved, whether the right or liability is one at common law or is one created by statute." *Id.* at p. 33.

Similarly, in *Bates v. Comstock Realty*, 306 Mo. 312, 267 S.W. 641 (1924), this Court rejected a contention that an action on a special tax bill was not triable by jury because such proceedings were unknown at the common law. "The right of trial by jury as it existed at common law," this Court said, "may well include the right to such a trial not only in common law action, so called, but those of like nature in which that mode of trial is appropriate." *Id.* at 644. The question is whether the proceeding "is analogous to an action at common law, or whether it in the nature of a suit in equity." *Id.*

 The fact that an action is brought pursuant to statute, whether in existence at the time of the 1820 Constitution or enacted later, does not exclude the prospect of a right to jury. The question is, according to *Bates:* is the claim "analogous to" actions brought at the time of the state's original 1820 Constitution?

Exercise of the right to jury trial in the 19th century is illustrated by the two circuit court trials of a case brought by one of Missouri's most famous litigants, Dred Scott. Scott, a slave who had journeyed with his master to free soil, sued for his freedom under a statute authorizing such suits. The suit in form was an action for trespass, for assault and false imprisonment, and the relief sought was nominal damages of ten dollars, in accordance with the 1844–5 statute under which Scott brought suit.[7] Both of Dred Scott's trials

---

7. WALTER EHRLICH, THEY HAVE NO RIGHTS: DRED SCOTT'S STRUGGLE FOR FREEDOM, (Greenwood Press 1979), p. 34. The statute under which Scott sued was chapter 69, "An Act to enable

in the Circuit Court of the City of St. Louis, in 1847 and 1850, were jury trials because, although they were actually suits for freedom and might sound like actions in equity, the claim was trespass, assault, and false imprisonment, the relief sought was damages and, thus, the action was at law.[8]

The present case—an action for damages for discrimination based upon age, sex and retaliation for filing a discrimination complaint—is analogous to those kinds of actions triable by juries at the time of the Constitution of 1820. Actions for trespass, which included actions for a variety of wrongs to the person, were tried to juries in the courts in 1820.[9] This form of action, now commonly referred to categorically as torts, fits into the analytical framework described in the *Briggs* case because it was an action for recovery of money only and involved issues of fact, "whether the right or liability is one at common law or is one created by statute." 20 S.W. at 33.[10]

An action for damages under the Missouri Human Rights Act seeks redress for an intentional wrong done to a person. It is a modern variant of claims for relief, called forms of action, known to the courts in 1820 for redress of wrongs done to a person. The specific statutorily described wrong, as stated in section 213.055, is that it is unlawful for an employer covered by the law "[t]o fail or refuse to hire or to

persons held in slavery to sue for their freedom," in *The Revised Statutes of the State of Missouri, Revised and Digested . . . during the Session of Eighteen Hundred and Forty-four and Eighteen Hundred and Forty-five.* The predecessor statute, enacted in 1835, precluded a claim for damages. *The Revised Statues of the State of Missouri*, 1840, pp. 284–286, para. 14. Scott and his wife, Harriet Robinson Scott, brought separate suits; their attorney proceeded only with Dred Scott's suit with the agreement that the decision in his case would apply to his family, which included his wife and two daughters. Lea Vandervelde and Sandhya Subramanian, *Mrs. Dred Scott*, 106 YALE L.J. 1033 (1997).

8. EHRLICH, chapters 5 and 7. The verdict in the first trial was against Scott, but the trial judge granted a new trial. In the second trial the verdict favored Scott. The judgment on that verdict, consistent with actions for freedom filed by slaves from at least as far back as 1824, was reversed in this Court's decision in *Scott v. Emerson*, 15 Mo. 576 (1852), which was overshadowed by the final decision by the United States Supreme Court in Scott's federal suit, *Scott v. Sandford*, 60 U.S. (19 How.) 393, 15 L.Ed. 691 (1856). For background, *see* Vandervelde and Subramanian.

9. "Trespass" has come to mean "an unlawful act committed against the person or property of another." BLACK'S LAW DICTIONARY, 7th Ed. (Bryan A. Garner, ed.), p. 1508. At common

law it referred to the form of action in which a pleading was framed. The analogy to modern-day torts is the action (or writ) referred to as trespass on the case: "This writ gave a form of action in which the court was enabled to render judgment of damages in cases of fraud, deceit, negligence, want of skill, defamation oral or written, and all other injurious acts or omissions resulting in harm to person or property, but wanting the *vi et armis*, the element of direct force and violence, to constitute trespass." Edwin E. Bryant, The Law of Pleading Under the Codes of Civil Procedure 7 (2d ed. 1899), quoted in Black's Law Dictionary, p. 1509. *See also*, The Forms of Action at Common–Law, A Course of Lectures by F.W. Maitland (Cambridge Univ. Press 1936), Lectures VI and VII, and Benjamin J. Shipman, Handbook of Common Law Pleading (3d Ed. Ballentine 1923), Chapter III. For examples of actions involving wrongs to the person, *see* Vol. 26A, Missouri Digest (1821 to Date)(1956), Chapter: "Torts."

10. The common-law "forms of action" were abolished in 1849 when Missouri adopted its version of New York's Field Code; Act of Feb. 24, 1849 entitled "Practice in the Courts of Justice: An Act to Reform the Pleadings and Practice in the Courts of Justice in Missouri," 1849 Mo. Laws 73. Section 1 of the act replaced the "forms of action" with "one form of action for the enforcement or protection of private rights, and the redress or prevention of private wrongs, which shall be denominated a civil action."

discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, national origin, sex, ancestry, age, or handicap; ...." Section 213.055.1(1)(a). The action for actual and punitive damages, brought by Diehl as plaintiff in the circuit court, is authorized by section 213.111.[11]

The statutorily based claims by Diehl are conceptually indistinguishable from other statutory actions for damages that traditionally have carried the right to a jury trial because they seek redress for wrongs to a person. For instance, a claim for damages for wrongful death is statutory; it has no common-law antecedent. Missouri's first wrongful death statute was enacted in 1855. *Sullivan v. Carlisle*, 851 S.W.2d 510, 513–514 (Mo. Banc 1993). Another example is the civil action created by section 287.780 for damages for retaliation against an employee who files a workers' compensation claim. (The workers' compensation claim itself is an administrative proceeding, as will be discussed.) This claim for retaliation did not exist in 1820; the claim for damages under section 287.780 is nonetheless subject to the right of jury trial. *See Hansome v. Northwestern Cooperage Co.*, 679 S.W.2d 273 (Mo. banc 1984).[12]

▮▮▮ Chapter 213 provides a variety of remedies, not only the common-law remedy of money damages, but equitable relief as well. Section 213.111. The fact that the statute authorizes equitable relief

---

11. Section 213.111 provides as follows:

"1. If, after one hundred eighty days from the filing of a complaint alleging an unlawful discriminatory practice pursuant to section 213.055, 213.065 or 213.070 to the extent that the alleged violation of section 213.070 relates to or involves a violation of section 213.055 or 213.065, or subdivision (3) of section 213.070 as it relates to employment and public accommodations, the commission has not completed its administrative processing and the person aggrieved so requests in writing, the commission shall issue to the person claiming to be aggrieved a letter indicating his or her right to bring a civil action within ninety days of such notice against the respondent named in the complaint. If, after the filing of a complaint pursuant to sections 213.040, 213.045, 213.050 and 213.070, to the extent that the alleged violation of section 213.070 relates to or involves a violation of sections 213.040, 213.045 and 213.050, or subdivision (3) of section 213.070 as it relates to housing, and the person aggrieved so requests in writing, the commission shall issue to the person claiming to be aggrieved a letter indicating his or her right to bring a civil action within ninety days of such notice against the respondent named in the complaint. Such an action may be brought in any circuit court in any county in which the unlawful discriminatory practice is alleged to have occurred, either before a circuit or associate circuit judge. Upon issuance of this notice, the commission shall terminate all proceedings relating to the complaint. No person may file or reinstate a complaint with the commission after the issuance of a notice under this section relating to the same practice or act. Any action brought in court under this section shall be filed within ninety days from the date of the commission's notification letter to the individual but no later than two years after the alleged cause occurred or its reasonable discovery by the alleged injured party."

"2. The court may grant as relief, as it deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order, and may award to the plaintiff actual and punitive damages, and may award court costs and reasonable attorney fees to the prevailing party, other than a state agency or commission or a local commission; except that, a prevailing respondent may be awarded court costs and reasonable attorney fees only upon a showing that the case is without foundation."

12. Other examples of statutorily based claims, tried to juries, include actions for damages under the Missouri service letter statute, section 290.140, and actions for damages under the Missouri Omnibus Nursing Home Act, section 198.093.

as one of the options for a plaintiff does not, however, make the civil action for damages an action in equity. As *Lee v. Conran* says, the characterization as law or equity depends "on the issue tendered by the pleadings." 111 S.W. at 1153. If the pleadings do not contain an equitable claim, the case is not in equity. The pleader has that option. *Slagle v. Callaway*, 333 Mo. 1055, 64 S.W.2d 923, 928 (1933).

Chapter 213 also has an option for obtaining relief in an administrative proceeding. The question is whether this feature changes the essential nature of the claim brought by Diehl from an action for damages based upon the anti-discrimination statute to an action for administrative or equitable relief that would not involve the constitutional right to a jury. Pursuing administrative relief is an option. The fact that it exists does not alter the essential nature of Diehl's claim, which is a civil action in court for damages.

### Analysis of Claims Under the Human Rights Act

To ascertain the essential nature of Diehl's statutory claim, it may be helpful to trace the origins of the anti-discrimination statute under which she brings her claim. The first statute dealing with employment discrimination, passed in 1961, established the Missouri Commission on Human Rights and empowered the agency to hear complaints of discrimination based upon race, creed, color, religion, national origin, and ancestry. Chapter 296, RSMo Supp.1961. Age and sex discrimination were not included. The original statute allowed a person aggrieved by a decision of the commission to file an action in circuit court for a trial *de novo*. The only limitation was that evidence could consist only of evidence offered in the proceeding before the commission. The former statute also provided, in section 296.050: "Any party to the proceeding in the circuit court

shall be entitled to a trial of the issues by a jury, upon written request therefore filed before the trial date." The latter provision was amended in 1965 to delete the provision for a trial *de novo*, including a jury, and to make the circuit court proceeding an appeal from an administrative agency order under the procedures for such appeals in chapter 536. (L.1965, p. 442.)

The current statute, chapter 213, replaced the former chapter 296. Enacted in 1986, the current statute includes discrimination based upon sex, age, and handicap, in addition to the categories included in the original statute. Chapter 213 retains from the original statute the administrative agency proceedings before the commission and adds section 213.111—which authorizes Diehl to bring this suit—to provide for a civil action for actual and punitive damages, among other remedies. *See State ex rel. Martin–Erb v. Missouri Commission on Human Rights,* 77 S.W.3d 600 (Mo. banc 2002).

When Diehl believed that she had been discriminated against, her first avenue of redress was to file an administrative complaint with the Missouri Commission on Human Rights, established in chapter 213, or with the federal Equal Opportunity Commission or with a local commission empowered to receive such complaints. When the state commission receives such a complaint, it is to investigate the complaint, attempt conciliation or otherwise to resolve the matter or, failing conciliation, to bring the matter before an administrative hearing. When the commission adjudicates a complaint through hearing, the decision can be appealed to a circuit court, under section 213.085, and judicial review is provided in accordance with chapter 536, which governs judicial review of administrative decisions.

If Diehl's complaint had stayed within the administrative framework, the admin-

istrative adjudication obviously would take place without a jury, and subsequent proceedings for judicial review would not involve a jury.[13] Administrative procedures, unknown at common law, do not have juries. An administrative proceeding provides "a new mode of recovery," this Court pointed out in denying a challenge to the workers' compensation system in *Goodrum v. Asplundh Tree Expert Co.*, 824 S.W.2d 6, 11 (Mo. banc 1992). Workers' compensation claims resolve issues of fact in administrative proceedings, with ultimate appeals on issues of law to the court. Though the remedy is money, the awards are statutorily prescribed benefits, not damages as would be available in civil actions.

Unlike workers' compensation proceedings where the administrative procedure provides the exclusive remedy and mode of recovery, Missouri Human Right Act actions have a separate, alternate path available to a complainant. That path is set forth in section 213.111, which allows Diehl to opt out of the commission's proceedings by asking for letter indicating that she has a right to bring a civil action (commonly referred to as a "right to sue" letter). When she requests the letter, after 180 days from the filing of her complaint with the commission, the commission is obligated to issue the letter if the commission has not completed its administrative processing. At this point, the complainant has the right to bring an action for damages or other relief against the respondent within 90 days of the letter, but not more than two years after the discrimination alleged-

ly took place, in the circuit court "in any county in which the unlawful discriminatory practice is alleged to have occurred...." Section 213.111; *see also Martin–Erb,* 77 S.W.3d 600.

Once the 180–day period has passed without administrative action, and the complainant requests a right-to-sue letter, the commission can proceed no further. *Id.* Section 213.111 clearly authorizes a separate civil action for damages that is not part of any administrative proceeding. The requirement that a complaint be filed first with the human right commission as a pre-condition to seeking relief in court seems little different from the statutory requirement that a medical negligence plaintiff, in order to proceed in an action for damages, file an affidavit that a health care provider has reviewed the claim and found it to be meritorious. *See Mahoney v. Doerhoff Surgical Services,* 807 S.W.2d 503, 507–508 (Mo. banc 1991). In a medical negligence case, failure to secure the opinion and to file an affidavit within 90 days ends the action; section 538.225. In a human rights act case, completion of the administrative proceedings within 180 days of a claimant's filing precludes a civil action; section 213.111. *Cf. State ex rel. Cardinal Glennon Mem. Hosp. v. Gaertner,* 583 S.W.2d 107 (Mo. banc 1979).

## Missouri Human Rights Act Cases in Federal Court

Missouri Human Right Act claims, under section 213.111, that are in federal court either on pendent jurisdiction[14] or because of diversity of citizenship jurisdic-

---

13. Under the predecessor statute, as amended in 1965 deleting the provision for trial de novo and jury trial, no jury was authorized for a circuit court action to review the administrative decision. *State ex rel. Missouri Commission on Human Rights v. Lasky,* 622 S.W.2d 762, 763 (Mo.App.1981). Moreover, judicial review of administrative decisions is subject to art. V, sec. 18 of the Missouri Constitution, which provides that such judicial review will be "as provided by law." *See* section 536.140. *See also DeMay v. Liberty Foundry Co.,* 327 Mo. 495, 37 S.W.2d 640, 644–645 (1931).

14. See 28 U.S.C. 1367.

tion[15] are appropriately treated by the federal courts as independent claims for relief for damages under Missouri law.

The first published federal decision to recognize a jury trial claim under section 213.111 of the current statute, enacted in 1986, was *Stewart v. Yellow Freight Systems, Inc.,* 702 F.Supp. 230 (E.D.Mo.1988), a one-count lawsuit filed in federal court after the plaintiff received a right-to-sue letter from the Missouri Human Rights Commission.

After the decision in *State ex rel. Tolbert v. Sweeney,* 828 S.W.2d 929 (Mo.App.1992), which denied a jury trial in human right act claims, there were some federal trial court rulings that were inconsistent with *Stewart,*[16] but the Court of Appeals for the Eighth Circuit held in *Gipson v. KAS Snacktime Co.,* 83 F.3d 225 (1996), that a claim authorized by section 213.111 is subject to a jury trial in federal court under the 7th Amendment. The *Gipson* decision specifically approved *Stewart,* a diversity of citizenship case, and *Sullivan v. Cura-*

*tors of the University of Missouri,* 808 F.Supp. 1420, 1424 (E.D.Mo.1992), a pendent jurisdiction case, which upheld the right to a jury trial in claims based on the Missouri Human Rights Act. 83 F.3d at 231.

The federal courts follow United States Supreme Court precedents on the right to jury trial under the 7th Amendment and do not follow *Tolbert.* The basis for the federal court conclusion that there is a right to jury trial of claims for damages under the Missouri Human Rights Act is that such actions are analogous to claims maintained at common law and are therefore within the 7th Amendment's guarantee that trial by jury be "preserved." *Curtis v. Loether,* 415 U.S. 189, 195, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), cited in *Gipson,* 83 F.3d at 230.[17] Under this Court's cases, discussed above, which apply the same historical analysis, the same result should occur for Missouri Human Rights Act claims.[18]

---

15. See 28 U.S.C. 1332.

16. *See* John F. Medler, Jr., *The Right to Jury Trial Under the Missouri Human Rights Act,* 50 J. of Mo. Bar 31, 32–33 (January–February 1994).

17. In *Curtis v. Loether,* 415 U.S. at 195, 94 S.Ct. 1005, the United States Supreme Court held that an action for damages for discrimination under the Fair Housing Act of 1968 "sounds basically in tort—the statute merely defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach." This cause of action, the Court said, "is analogous to a number of tort actions recognized at common law."

18. One of the briefs *amici curiae* urges this Court not to recognize a right to jury trial with the following argument: Counsel for plaintiff Diehl, the brief contends, "crafted" the petition to avoid federal jurisdiction by "not unintentionally limit[ing] her claim to $75,000 (the threshold for federal diversity jurisdiction)" and by "fail[ing] to assert avail-

able federal age, sex, and retaliation claims (thereby avoiding federal question jurisdiction)." These strategic decisions, the *amici* brief complains, foreclosed the employer defendant's "option to remove the suit to federal court" under 28 U.S.C. 1441. To follow the logic of the *amici* argument, one can conclude: if counsel for Diehl had not so "crafted" the petition, the defendant-employer could have removed the suit to federal court where ... Diehl would get a jury trial. The existence of the federal statute allowing claims to be removed to the federal court allows defendants a "forum-shopping" option. The potential for federal court jurisdiction likewise influences a plaintiff's choice of claims and remedies. While there are differences between a federal and state court— including differences as to the composition and procedural rules related to juries—that may influence forum selection by either side, the presence or absence of a jury should not be one of them. *Amici* also raise concerns about venue in the state courts. However, *amici* apparently overlook the fact that section 213.111 does not subject a defendant to

## Court of Appeals Decisions Denying Jury Trials

The Court of Appeals, Southern District, in *State ex rel. Tolbert v. Sweeney*, 828 S.W.2d 929, as noted above, upheld denial of a jury trial in an action for damages under the human rights act. Two decisions of the Court of Appeals, Eastern District, followed *Tolbert* without further analysis: *Pickett v. Emerson Electric Co.*, 830 S.W.2d 459, 460 (Mo.App.1992), and *Wentz v. Industrial Automation*, 847 S.W.2d 877, 880 (Mo.App.1993). The western district, in *State ex rel. Wayside Waifs v. Williamson*, 3 S.W.3d 390 (Mo.App. 1999), declined to decide the issue because no writ was sought on the human rights act jury issue, but noted it was an open question in the western district and in this Court.

The court in *Tolbert* considered that "most of the weapons" and "the main thrust of the relief to be afforded" under the human rights act are "equitable in nature." The federal courts, as noted above, have rejected the characterization of an action for damages under the Missouri statute as equitable in nature. From this Court's cases, discussed above, it is clear that *Tolbert* stands apart from the traditional analysis applied by this Court. Whether the action is equitable or at law is determined by reference to the pleadings, and the pleadings in *Tolbert* and in this case, which state claims for damages, make these actions subject to the right of trial by jury. The fact that the Missouri statute has options for a claimant to pursue equitable or administrative relief— which the claimant Diehl does not pursue—does not make an action for damages in a civil action for violation of the statute an equitable or administrative action.

Tolbert also construed the statute itself as not providing for a jury trial. The right to trial by jury, where it applies, is a constitutional right, applies "regardless of any statutory provision," and is "beyond the reach of hostile legislation." *Lee v. Conran*, 111 S.W. at 1153. Accordingly, *Tolbert, Pickett, and Wentz*, which denied jury trials, are overruled.

## Conclusion

Diehl has filed a civil action, for damages only, under the Missouri Human Rights Act. This action is neither equitable nor administrative in nature. Diehl's civil action for damages for a personal wrong is the kind of case triable by juries from the inception of the state's original constitution. The respondent judge's order overruling Diehl's request for a jury trial denied her constitutional right to trial by jury under article I, sec. 22(a) of the Missouri Constitution. The Court's preliminary writ of prohibition is made absolute.

LIMBAUGH, C.J., WHITE, BENTON, STITH and TEITELMAN, JJ., and CUNDIFF, SR.J., concur.

PRICE, J., not participating.

the range of plaintiff's venue options in chapter 508 available for civil cases generally. Section 213.111 limits venue to a "county in which the unlawful discriminatory practice is alleged to have occurred."