Lance SCOTT, Appellant/Cross–
Respondent,

v.

BLUE SPRINGS FORD SALES, INC.,
Respondent/Cross–Appellant,

and

Robert C. Balderston, Respondent.

No. SC 86287.

Supreme Court of Missouri,
En Banc.

Nov. 22, 2005.

Bernard E. Brown, Dale K. Irwin, Kansas City, for Appellant/Cross–Respondent.

David J. Roberts, Kevin D. Case, Kansas City, for Respondent/Cross–Appellant.

J.R. Hobbs, Marilyn B. Keller, Kansas City, for Respondent.

PER CURIAM.

The issue in this case for this Court is whether the trial court erred in refusing to submit Lance Scott's claim for punitive damages under section 407.025 [1] to a jury. Scott contends that to the extent section 407.025 prohibits the submission of a punitive damage claim to the jury, it is invalid as depriving him of his constitutional right to a jury trial. This Court has jurisdiction. *Mo. Const. article V, section 3.*

The trial court erred in failing to submit the punitive damage claim to the jury. Having determined the issue giving this Court jurisdiction, the case is transferred to the Court of Appeals, Western District, for resolution of the remaining issues on appeal.

### Background

Lance Scott bought a 1991 vehicle from Blue Springs Ford Sales, Inc., which is owned by Robert C. Balderston. The sale occurred in 1994. As part of the sale, Scott purchased an extended service contract on the used vehicle; however, the extended service policy did not issue because the vehicle had a previous salvage title. Scott was not told at the time of the sale that the vehicle previously had been involved in an accident and was the subject of a salvage title. He was not told that the extended service contract was rejected. In 1999 or 2000, Scott learned of the previous salvage title.

Scott sued under numerous theories, including a claim for violations of chapter 407. He requested punitive damages for the chapter 407 violations and a jury trial on that issue. The court denied the jury trial request, but other issues were submitted to a jury. The court awarded a judgment of $867,599.82, of which $840,000 was punitive damages on a common law fraud claim. The court determined that punitive damages on the chapter 407 claim were not permitted because Scott refused to elect remedies between the chapter 407 punitive damages and the common law fraud punitive damages.

### Jury Trial of Chapter 407 Punitive Damages

Article I, section 22(a), of the Missouri Constitution states in pertinent part: "That the right to trial by jury as heretofore enjoyed shall remain inviolate." *State ex rel. Diehl v. O'Malley,* 95 S.W.3d 82, 84–85 (Mo. banc 2003), drawing on well-established precedent, held that the words "as heretofore enjoyed" was a reference to the right to trial by jury as set out in the Missouri Constitution at the time of statehood in 1820. It noted that in 1820 actions

---

1. All statutory references are to RSMo 2000. Chapter 407 is commonly referred to as the Missouri Merchandising Practices Act.

for damages were triable to juries. The Court explained that in applying the right to trial by jury, the question is whether the proceeding is analogous to an action at common law or whether it is in the nature of a suit in equity, *id.* at 86, and that, from the status of the right as of 1820, the simple analysis is whether the action is a civil action for damages. If so, the jury trial right is to remain inviolate. *Id.* at 85. Applying these rules, the Court then held that the constitutional right to trial by jury applies even in a statutory action if the statutory remedy is damages because the statutory action is indeed a civil action for damages. *Id.* at 89.

The specific application in *Diehl* was to a claim for violation of the Missouri Human Rights Act and the provision of section 213.111.2 stating that "the court may ... award actual and punitive damages." Even though the statute referred only to "the court," the right to jury trial was held to apply nonetheless. Similarly, regarding the punitive damages claim in this case, section 407.025.1 states that "... [t]he court may, in its discretion, award punitive damages...." There is no basis to distinguish between the two cases. Although *Diehl* did not specifically address the punitive damage component of the damage award authorized under the statute, there is no question that punitive damages (exemplary damages), as well as actual damages, were recognized under the common law in 1820. *See Lake Shore & M.S. Ry. Co. v. Prentice,* 147 U.S. 101, 13 S.Ct. 261, 37 L.Ed. 97 (1893) (listing representative cases).

■ Blue Springs Ford, citing *Fust v. Attorney General,* 947 S.W.2d 424 (Mo. banc 1997), and other cases, argues that because the legislature has the power to create or abolish the cause of action at hand, it follows that the legislature has the power to dictate the terms of the cause of action, including whether the court or the jury is to determine punitive damages. *Fust,* however, holds only that the legislature has the power to create or abolish or otherwise limit the remedy of punitive damages. This argument confuses the judicial process by which claims are determined with the substance of the claims themselves. Though, in general, the legislature is free to establish the substance of a claim, as, for instance, to allow or disallow punitive damages, it is not free to establish a procedure for adjudicating that substantive claim if the procedure contravenes the constitution. In short, a statute is not valid that provides for punitive damages but precludes a jury trial to determine those damages. That is not to say, however, that section 407.025.1 is not valid. Neither section 407.025.1 in this case nor section 213.111.2 in *Diehl* explicitly prohibits a jury trial. For that reason, just as in *Diehl,* the Court need not invalidate the statute but reads the statute in light of the constitutional guarantee of a jury trial.

### Election of Remedies

■ This Court recently iterated the theories of the election of remedies doctrine and the election of inconsistent theories of recovery. *Trimble v. Pracna,* 167 S.W.3d 706, 711 (Mo. banc 2005). The election of remedies doctrine is a doctrine of estoppel, basically providing that where a party has the right to pursue one of two inconsistent remedies and makes an election, institutes suit, and prosecutes it to final judgment, that party cannot thereafter pursue another and inconsistent remedy. Entirely distinct from the election of remedies is the election of inconsistent theories of recovery. Under this doctrine, a party must elect between theories of recovery that are inconsistent, even though pled together as permitted by Rule 55.10, before submitting the case to the trier of

fact. If two counts are so inconsistent that proof of one necessarily negates, repudiates, and disproves the other, it is error to submit them together.

Each of these theories requires an inconsistency to exist with multiple theories of recovery. In this case, there is no inconsistency between a punitive damage award for fraud and a punitive damage award for violation of chapter 407. See *Davis v. Cleary Building Corp.*, 143 S.W.3d 659, 669–70 (Mo.App.2004).

■ If a plaintiff's punitive damages for violation of chapter 407 and for fraud are the same, then the damage awards merge. *Trimble v. Pracna,* 167 S.W.3d 706, 711 (Mo. banc 2005). Although the jury found Scott was entitled to punitive damages as to the common law fraud claim, there has been no jury finding as to punitive damages on the chapter 407 violations. It would not be proper to assume that the same, or any, amount of punitive damages would be awarded for such violations. Therefore, a new trial must be awarded to determine the amount of punitive damages for the chapter 407 claim.

■ Once there is a jury finding as to the proper amount of punitive damages for each claim, the trial court can determine the extent to which the awards merge and whether the amount of the award is in accordance with *State Farm v. Campbell,* 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), and enter judgment accordingly.

### Conclusion

Scott is entitled to a jury determination of punitive damages for the chapter 407 violations. Having resolved the issue giving this Court jurisdiction, the case is transferred to the Court of Appeals, Western District, for resolution of the remaining issues. *Hoskins v. Business Men's Assur.,* 79 S.W.3d 901, 905 (Mo. banc 2002).

WOLFF, C.J., STITH, PRICE, LIMBAUGH, and RUSSELL, JJ., concur.

TEITELMAN, J., concurs in separate opinion filed.

WHITE, J., concurs in opinion of TEITELMAN, J.

RICHARD B. TEITELMAN, Judge, concurring.

I concur in the majority opinion and write separately to emphasize the importance of a jury's punitive damage award in cases brought under statutes such as the Missouri Merchandising Practices Act.

Missouri's Merchandising Practices Act, Chapter 407, RSMo, is designed to protect Missouri consumers from fraudulent business practices. *State ex rel. Nixon v. Telco Directory Publ'g,* 863 S.W.2d 596, 601 (Mo. banc 1993). To remedy violations and to deter future prohibited conduct, the statute allows for injunctive relief, payment to the State for the cost of prosecution, punitive damages, restitution to injured consumers, and attorney's fees. All of these remedial measures are important, but the possibility of punitive damages provides one of the most effective deterrents of future misconduct by a defendant or by others who may be similarly tempted to engage in fraudulent business practices.

In their briefs before this Court, the defendants assert that the punitive damages in this case are excessive for, among other reasons, being disproportionate to the amount of compensatory damages. While this may or may not be the case, it is important to note that while the degree of disparity between the actual damages and punitive damages is relevant in determining whether punitive damages are excessive, this factor alone is not determina-

tive. Instead, courts review punitive awards using three factors: (1) the reprehensibility of the defendant's misconduct; (2) the disparity between the harm and the punitive award; and (3) the difference between the punitive award and penalties authorized or imposed in comparable cases. *State Farm Mut. Ins. v. Campbell*, 538 U.S. 408, 418, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). Because each case must be assessed on its own facts, no court has imposed inviolable constitutional limits on the ratio between punitive and compensatory. To do so would require the courts to supplant the jury's considered decision in favor of an arbitrary limit that may have no relationship whatsoever to the extent and severity of the defendant's misconduct.

The Supreme Court's opinion in *State Farm Mut. Ins. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), does not hold otherwise. In *Campbell*, the Court offered the following dicta:

> Our jurisprudence and the principles it has now established demonstrate, however, that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process. *Id.* at 425, 123 S.Ct. 1513.

However, the Court qualified this dicta by stating that in cases involving egregious conduct but a small amount of compensatory damages, ratios greater than a single digit may comport with due process. *Id.* The Court's refusal to adopt an arbitrary ratio for reviewing punitive damage awards is consistent with the recognition that punitive damages further a State's legitimate interests in punishing wrongful conduct and deterring its repetition. *State Farm Mut. Ins. Co. v. Campbell*, 538 U.S. 408, 416, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).

Subsequent cases reflect the proper application of *Campbell*. For instance, in *Kemp v. American Telephone & Telegraph Company*, 393 F.3d 1354 (11th Cir.2004), AT & T was found to have, as part of a wide practice, billed a customer for improper charges disguised as long-distance charges. The court upheld an award of $115.05 in compensatory damages and $250,000 in punitive damages. Although this amounted to a punitive to compensatory ratio of 2,172:1, the court noted that a lesser amount of punitive damages would utterly fail to serve the traditional purposes underlying an award of punitive damages, which are to punish and deter. *Id.* at 1363–65. Similarly, in *Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d 672 (7th Cir.2003), the court discussed *Campbell* at length in upholding an award of $5,000 in compensatory damages and $186,000 in punitive damages where a motel had re-rented rooms known to be infested with bedbugs. Although the ratio of punitive to compensatory was 37:1, the court recognized that a larger punitive damage award was necessary in order to have a sufficient deterrent effect. *Id.* at 678.

As the foregoing cases establish, courts must consider the propriety of punitive damage awards by giving full consideration to all relevant factors, including whether the award provides a sufficient deterrent effect. There is nothing in the law that vests appellate courts with a license to toss aside considered jury verdicts based upon arbitrary ratios or mathematical formulae. To do so would undermine the essential deterrent effect provided by properly awarded punitive damages.