

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| JASON D. DODSON & JASON D. DODSON, JR., A MINOR & EVA RAINE DODSON-LOHSE, A MINOR AND AUGUST WILLIAM DAVIS DODSON, A MINOR, SAID MINORS APPEARING BY THE DULY APPOINTED NEXT FRIEND JASON D. DODSON, | ) ) ) ) ) ) ) ) | No. ED100952 and ED101143 |
| Plaintiffs/Respondents/Cross-Appellants, | ) ) | Appeal from the St. Louis County Circuit Court |
| vs. | ) ) | |
| ROBERT P. FERRARA, M.D., AND MERCY CLINIC HEART AND VASCULAR, L.L.C., | ) ) ) | Honorable Thea A. Sherry |
| Defendants/Appellants/Cross-Respondents. | ) | Filed: July 21, 2015 |

### Introduction

Dr. Robert P. Ferrara and his employer, Mercy Clinic Heart and Vascular, LLC (Defendants) appeal the judgment of the trial court, awarding Jason Dodson and his children (Plaintiffs) $2,181,155 on their wrongful death action. Defendants challenge (1) Plaintiffs' counsel's question to Defendants' expert regarding St. Louis-based physicians; (2) the admissibility of evidence that Dr. Ferrara did not speak with the cardiac surgeon following Shannon Dodson's death; (3) the trial court's decision to submit Missouri Approved Instruction 2.07 regarding insurance; (4) the denial of Defendants' motion for directed verdict on the issue

of loss of economic support; and (5) the delayed denial of motion for directed verdict on the issue of aggravating damages.

Plaintiffs filed a cross-appeal, challenging the constitutionality of § 538.210(1) RSMo,[1] which caps noneconomic damages in tort actions against healthcare providers at $350,000. Plaintiffs argue that the Missouri Supreme Court declared the damage cap unconstitutional in *Watts v. Lester E. Cox Medical Centers*, 376 S.W.3d 633 (Mo. banc 2012). Plaintiffs also argue that the statute is unconstitutional because it violates the equal protection clause and separation of powers. Finally, Plaintiffs contend that the trial court erred in granting Defendants' motion for directed verdict on the issue of aggravating damages. We conclude that we do not have jurisdiction to hear this appeal, and order the case transferred to the Missouri Supreme Court.

**Factual Background**

This case arises out of the death of Shannon Dodson (Decedent), wife of Jason Dodson and mother of three children. In February 2011, Decedent experienced shortness of breath and went to the emergency room at Mercy Hospital, where she was diagnosed with bronchitis. She complained of chest pain and an electrocardiogram (EKG) revealed some abnormalities. Interventional cardiologist Dr. George Kichura treated Decedent that day. After reviewing the results of her EKG and determining they were abnormal, Dr. Kichura recommended that Decedent undergo a stress EKG, which did not produce clear images of the heart. Dr. Kichura then recommended a cardiac catheterization, so that the doctors could conclusively determine whether Decedent had any heart disease. While Decedent initially expressed some fear, she decided to undergo the cardiac catheterization. Dr. Kichura scheduled the surgery, to be performed in the catheterization lab by Dr. Robert Ferrara.

---

[1] All statutory references are to RSMo 2005, unless otherwise indicated.

During the catheterization, Decedent suffered a left main coronary artery dissection, which caused difficulty in blood flow to the heart. Dr. Ferrara called Dr. Kichura to the catheterization lab to confer about whether to proceed with a stent. Dr. Ferrara also asked a nurse to call the surgeon to prepare an operating room. When Dr. Kichura arrived, about twenty minutes later, Dr. Ferrara was preparing to put in an intra-aortic balloon pump. Dr. Kichura continued with the balloon pump to attempt to restore blood flow, which was only partially successful. Dr. Blucher, a cardiothoracic surgeon, responded to the earlier call for a surgeon, and Dr. Ferrara conferred with him. Decedent was transported to surgery. Efforts to restore cardiac function failed. Decedent was pronounced dead shortly thereafter.

Plaintiffs filed suit against Defendants for wrongful death. Plaintiffs claimed that Dr. Ferrara was medically negligent and caused Decedent's death through his negligent performance in addressing the complications of the cardiac catheterization. Plaintiffs also claimed aggravating damages. The case proceeded to trial in August 2013.

At the close of the evidence, the trial court granted Defendants' motion for a directed verdict on the claim for aggravating damages. Subsequently, the jury returned a verdict for Plaintiffs on the wrongful death claim, awarding Plaintiffs:

Past economic damages: $305,737

Past noneconomic damages: $1,000,000

Future economic damages: $1,525,418

Future noneconomic damages: $8,000,000

Defendants filed a post-trial motion for a reduction of the noneconomic damages award, pursuant to § 538.210, which limits noneconomic damages in medical malpractice cases to no more than

3

$350,000. The trial court granted Defendants' motion and entered an amended judgment of $2,181,155. Both parties appealed.

Plaintiffs filed their Notice of Appeal and Jurisdictional Statement with the Missouri Supreme Court. Plaintiffs argued that the Missouri Supreme Court had exclusive jurisdiction over the appeal because they challenge the constitutional validity of a state statute. Defendants countered that the case falls within the general jurisdiction of the Court of Appeals. The Supreme Court ordered the cause transferred to this Court. Plaintiffs' appeal was consolidated with Defendants' appeal previously filed in this Court.

**Discussion**

In their cross-appeal, Plaintiffs challenge the constitutionality of a state statute, and as a general rule, questions regarding a statute's constitutionality are a matter within the exclusive jurisdiction of the Missouri Supreme Court. MO. CONST. art. V, § 3; *Sharp v. Curators of the Univ. of Mo.*, 138 S.W.3d 735, 737 (Mo. App. E.D. 2003). However, there are two exceptions to this rule. *Id.* at 738. First, if the claim is not properly preserved for review, jurisdiction falls in this Court, rather than the Supreme Court. *Id.* "To properly preserve a constitutional issue for appellate review, the issue must be raised at the earliest opportunity and preserved at each step of the judicial process." *Id.* The trial court must have ruled on the constitutionality of the statute, and the theory of the argument on appeal must be the same as that raised at the trial court. *Id.* Second, this Court has jurisdiction if the claim is not "real and substantial." *Id.* A claim is real and substantial if:

> Upon preliminary inquiry, the contention discloses a contested matter of right, involving some fair doubt and reasonable room for controversy; but if such preliminary inquiry discloses the contention is so obviously unsubstantial and insufficient, either in fact or law, as to be plainly without merit or a mere pretense, the claim may be deemed merely colorable.

4

*Id.* "One clear indication that a constitutional challenge is real and substantial and made in good faith is that the challenge is one of first impression." *Id.*

*"Earliest Opportunity"*

We must first address the threshold issue whether Plaintiffs timely raised their constitutional arguments. Defendants argue that Plaintiffs did not timely raise a constitutional challenge to the application of § 538.210, and that because Plaintiffs did not raise their constitutional claims at the earliest possible time, those claims are waived. Plaintiffs maintain that the claims were timely raised.

Claims must be properly preserved "to prevent surprise to the opposing party and to allow the trial court the opportunity to identify and rule on the issue." *Hill v. Boyer*, No. ED101552, 2015 WL 3759344, at *2 (Mo. App. E.D. 2015). Parties in litigation must have "full and fair opportunity to litigate significant issues as early and as inexpensively in the litigation process as possible." *Id.* Nonetheless, "the purpose of the rule is not to prevent parties from litigating issues that arise during the course of a lawsuit if there is no prejudice to the opposing party." *Id.*

Here, Defendants raised the issue of § 538.210 in their answer. Raising an affirmative defense, Defendants argued:

> [I]n the event of an adjudication of the issues in this case whereby this defendant is held liable to respond in damages to any plaintiff, defendant invokes the provisions of § 538.210, RSMo. (2006), which provides, in part, that no plaintiff shall recover more than $350,000, for non-economic damages irrespective of the number of defendants.

Plaintiffs did not raise their constitutional challenges to § 538.210 until after the trial court entered its judgment and Defendants filed their motion to amend the judgment pursuant to § 538.210. The record shows that both Plaintiffs and Defendants submitted memoranda to the

5

trial court with arguments on whether the noneconomic damage cap should apply.  The motion was argued on November 7, 2013.  The trial court amended its judgment on December 16, 2013. It is clear from the record that the parties had the "full and fair opportunity to litigate" the application of the noneconomic damage cap.  *Hill*, 2015 WL 3759344, at \*2.

Defendants argue that Plaintiffs should have addressed the issue after Defendants raised § 538.210 as an affirmative defense in their responsive pleadings, and because Plaintiffs failed to do so, the claims are waived.  However, we fail to see how Defendants were prejudiced by Plaintiffs waiting to file a motion not to reduce noneconomic damages until the jury had returned a verdict that included noneconomic damages above the amount contained in § 538.210.  *Hill*, 2015 WL 3759344, at \*2.  Litigating whether the noneconomic damage cap should have been applied before a judgment including noneconomic damages was entered would have been inefficient.  After the judgment was entered in excess of the cap, the parties were given a full and fair opportunity to litigate the issue, and the trial court was given the opportunity to, and in fact did, rule on the motions.  *See Call v. Heard*, 925 S.W.2d 840, 847 (Mo. banc 1996) ("[The opposing party] had the opportunity to respond and the trial court had the opportunity to address the issue; thus the purposes of the rule were met").  As a result, we conclude that this issue is properly preserved.  Accordingly, we next determine whether the issues raised are real and substantial.

*Right to a Jury Trial*

In Plaintiffs' first point on appeal, Plaintiffs contend that the trial court erred in applying § 538.210 because the cap was found unconstitutional as a violation of the right to trial by jury. Specifically, Plaintiffs argue that the Missouri Supreme Court held in *Watts v. Lester E. Cox Medical Centers* that the noneconomic damage cap is unconstitutional, and that the reasoning in

6

*Watts* applies to wrongful death claims because wrongful death is a cause of action recognized at the common law.  Further, Plaintiffs maintain that *Sanders v. Ahmed*, 364 S.W.3d 195 (Mo. banc 2012), does not apply because that case considered a different version of § 538.210,[2] and because *Watts* is more recent than *Sanders*.  In response, Defendants argue that *Sanders* does, in fact, control in this case, that wrongful death is not a cause of action that was recognized at the common law, and that the different versions of § 538.210 are not relevant to the distinctions between *Watts* and *Sanders*.

The two cases significantly relied on in Plaintiffs' argument, *Sanders* and *Watts*, were decided by the Missouri Supreme Court within six months of each other in 2012.  These two cases were preceded by *Adams By and Through Adams v. Children's Mercy Hospital*, in which the Missouri Supreme Court upheld the validity of a previous version of the noneconomic damage cap in regard to common-law medical negligence causes of action.  832 S.W.2d 898, 900 (Mo. banc 1992).  The Court held that because § 538.210 RSMo (1986) "establishes the substantive, legal limits of the plaintiffs' damage remedy," it is a matter of law that is beyond the role of the jury, and therefore it does not infringe upon the right to a jury trial.  *Id.* at 907.

In *Sanders*, the Court faced another challenge to the noneconomic damage cap.  The plaintiff argued that § 538.210 violated the right to a jury trial.  364 S.W.3d 195, 202 (Mo. banc 2012).  However, the Court differentiated the plaintiff's case from *Adams*, because the plaintiff was suing for wrongful death, rather than common-law medical negligence.  *Id.* at 203.  The Court further noted that Missouri does not recognize a common law cause of action for wrongful death.  *Id.*  Because wrongful death is a statutorily created cause of action, the Court found that "[t]he legislature has the power to define the remedy available if it creates the cause of action."

---

[2] The previous version of the statute allowed plaintiffs to recover from more than one defendant and also provided for a cost of living increase.  § 538.210 RSMo (2000).

*Id.* Accordingly, the Court concluded that the noneconomic damage cap, when applied to wrongful death actions, does not violate the right to a jury trial. *Id.* at 204.

Following *Sanders*, the Court decided *Watts*, in which the plaintiff asserted that *Adams* was wrongly decided.[3] 376 S.W.3d 633, 637 (Mo. banc 2012). The *Watts* Court held that § 538.210 "is unconstitutional to the extent that it infringes on the jury's constitutionally protected purpose of determining the amount of damages sustained by an injured party," because limitations on damages were not permitted at common law when Missouri adopted its constitution in 1820. *Id.* at 636. In so holding, the Court examined the historical context of Article I, § 22(a) of the Missouri Constitution. *Id.* at 637. The Court considered whether a plaintiff, in 1820, was entitled to a jury determination of her noneconomic damages, and stated that if so, a cap on noneconomic damages would be unconstitutional. *Id.* at 638. The Court found that a claim for medical negligence, including noneconomic damages, did exist in 1820 and therefore, the right to a jury trial, including a jury's determination of noneconomic damages, attaches. *Id.* In finding that § 538.210 violates the right to trial by jury when applied to common-law medical negligence actions, the Court stated that the cap "operates wholly independent of the facts of the case" and "directly curtails the jury's determination of damages." *Id.* at 640. The Court further found that the Court's previous ruling in *Adams* violates the right to a jury determination of damages for four reasons. *Id.* at 641-44. First, the Court found that *Adams* "misconstrued the nature of the right to trial by jury" by focusing on the jury's role as fact-finder rather than the individual's right "to the damages awarded by the jury." *Id.* at 642.

---

[3] Judge Michael Wolff authored a concurring opinion in *Klotz v. St. Anthony's Medical Center* in which he also advocated for the Court to overturn *Adams*. 311 S.W.3d 752, 774 (Mo. banc 2010) (Wolff, J., concurring). Judge Wolff extensively reviewed the common law history and concluded that noneconomic damage caps violate the right to a jury trial, as to common law medical negligence. *Id.* at 780. However, Judge Wolff also noted that some statutory limits on damages are valid because the cause of action did not exist at common law, for example, wrongful death. *Id.* at 779.

8

The Court also found that *Adams* "permits legislative limitation of an individual constitutional right," disregards longstanding Missouri law that "the jury's role is precisely to determine both liability and damages," and finally, that *Adams* did not cite to any applicable Missouri law. *Id.* at 642-44. Noting a general unwillingness to overturn its own precedent, the Court found that overturning *Adams* was "necessary to protect the constitutional rights of Missouri's citizens." *Id.* at 644.

First, we address Plaintiffs' contention that *Watts* overruled *Sanders*, to the extent that both cases address whether § 538.210 violates the right to a jury trial. We disagree. The *Watts* Court limited its holding to common-law medical negligence. Despite the fact that *Watts* is more recent in time than *Sanders*, the Supreme Court's *Sanders* holding still stands, because *Watts* did not address the applicability of noneconomic damage caps to wrongful death causes of action. Further, Plaintiffs' attempt to differentiate the two versions of § 538.210 likewise fails. The Court's focus in both *Watts* and *Sanders* is whether the damage cap violates the right to a jury trial, a principle applicable regardless of whether plaintiffs may recover against more than one defendant or whether there is a cost of living increase written into the statute.

Nonetheless, Plaintiffs maintain that the *Watts* decision applies to wrongful death causes of action as well as common law actions. Plaintiffs state that any other interpretation would sever the statute so that noneconomic damage caps apply to wrongful death but not to common-law medical negligence. Defendants contend that the *Watts* Court utilized the doctrine of severability when it held that § 538.210 is unconstitutional as to common law claims, and as a result, the cap on noneconomic damages in wrongful death cases still applies post-*Watts*.

9

Section 538.210 is silent on severability.[4]  Statutes "should be upheld to the fullest extent possible."  *Gen. Motors Corp. v. Dir. of Revenue*, 981 S.W.2d 561, 568 (Mo. banc 1998).  Statutes are presumptively severable.  *Id.*  Under § 1.140, which addresses the severability of statute provisions:

> If any provision of a statute is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of the statute are valid unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

§ 1.140 RSMo (2000).  Because statutes are presumptively severable, we conclude that § 538.210 is severable, and that the trial court did not err in its interpretation of *Watts* and *Sanders*.  The noneconomic damage cap on a cause of action for wrongful death is not "incomplete and … incapable of being executed in accordance with legislative intent" without the cap on common law causes of action.  Because wrongful death is a statutory cause of action, separate and apart from the common law cause of action for medical negligence, the provisions of the statute are not "essentially and inseparably connected."[5]

As it stands, *Sanders'* ruling that § 538.210 is constitutional as to wrongful death causes of action stands.  *Watts* did not overrule *Sanders* – it simply held unconstitutional § 538.210 as it

---

[4] This Court recognizes that the legislature passed a new cap on noneconomic damages in 2015 that explicitly addresses severability.  S.B. 239, 98th Gen. Assem., Reg. Sess. (Mo. 2015).  However, the previous version of the statute did not.

[5] Plaintiffs, in arguing that wrongful death is analogous to common law negligence, rely on *State ex rel. Diehl v. O'Malley*, 95 S.W.3d 82 (Mo. banc 2003).  *Diehl* addresses the right to a jury trial under the Missouri Human Rights Act (MHRA).  *Id.* at 84.  However, the issue in *Diehl* is different from the issue raised here.  The *Diehl* Court ruled on whether an MHRA plaintiff's right to a jury trial was violated when the trial court denied her motion for a jury trial on her MHRA claim.  *Id.*  The Court ruled that the plaintiff did have the right to a jury trial, despite the fact that the MHRA cause of action was statutorily created.  *Id.* at 92.  Here, Plaintiffs were granted a jury trial.  The issue is whether or not the damage cap violates the right to a jury trial, which *Diehl* did not address.  While the historical common law background in *Diehl* is relevant to our considerations here, *Diehl* does not apply in the way Plaintiffs contend.

applies to common law medical negligence. The statute is severable, and therefore, we conclude that Plaintiffs' arguments regarding the right to a jury trial is merely colorable.

*Separation of Powers*

Plaintiffs also contend that § 538.210 violates separation of powers.[6] Specifically, Plaintiffs contend that the statutory cap on noneconomic damages interferes with the judicial function of remittitur. The Missouri Supreme Court addressed a similar argument in *Sanders v. Ahmed* as it relates to actions for wrongful death. 364 S.W.3d at 204. In *Sanders*, the plaintiff argued that the cap "interferes with the judiciary's performance of its constitutionally assigned power to render judgments in conformity with the jury's verdict and to enforce judgments upon the verdict." *Id.* at 204. The Missouri Supreme Court reasoned that § 538.210 is the law "through which the wrongful death cause of action operates," and that after the jury makes the factual determination of damages, the judge applies the law to the fact-finder's determination. *Id.* at 205. Accordingly, the Court found that the statutory cap does not violate separation of powers. *Id.* Because of the Supreme Court's holding in *Sanders*, we do not see any controversy on the issue of whether § 538.210 violates separation of powers. *See Sharp*, 138 S.W.3d at 738. We find that the separation of powers challenge to § 538.210 is merely colorable.

*Equal Protection*

Finally, we turn to Plaintiffs' contention that the Missouri Supreme Court's rulings in *Watts* and *Sanders* violate both the federal and state equal protection guarantees. *See* U.S. CONST. amend. XIV, § 1; MO. CONST. art. I, § 2. Plaintiffs argue that § 538.210 as applied violates equal protection because it treats similarly situated individuals – wrongful death and

---

[6] MO. CONST. art. II, § 1 reads, "The powers of government shall be divided into three distinct departments – the legislative, executive and judicial – each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly direct or permitted."

11

common-law medical negligence plaintiffs – differently. Plaintiffs contend that this differentiation does not pass constitutional muster under any of the equal protection standards of review. Defendants counter that the statute does not violate equal protection, as confirmed by the Missouri Supreme Court in *Adams*.

In the *Adams* case, the Missouri Supreme Court also addressed an equal protection claim. 832 S.W.2d at 903. In *Adams*, the plaintiffs claimed that "the right to a trial by jury, the right to open courts and the right to a certain remedy are 'fundamental rights' and that victims of medical malpractice are a 'suspect class.'" *Id.* at 903. The *Adams* Court concluded that § 538.210 did not violate a fundamental right and that victims of medical malpractice are not a suspect class. *Id.* Accordingly, the Court exercised rational basis review and found that the statutory cap was rationally related to reducing medical costs by lowering medical malpractice insurance premiums. *Id.* at 904.

Notably, the *Watts* Court overturned *Adams,* but only "to the extent that it holds that Section 538.210 caps on noneconomic damages do not violate the right to trial by jury." *Watts*, 376 S.W.3d at 646. Therefore, the *Adams* decision regarding equal protection still stands.

Nonetheless, Plaintiffs' challenge to the constitutionality of § 538.210 is based upon the distinction between medical negligence and wrongful death plaintiffs that *Sanders* and *Watts* created. Here, Plaintiffs do not argue that medical malpractice plaintiffs, on the whole, are a suspect class, but rather that wrongful death plaintiffs are similarly situated to other medical malpractice plaintiffs. Missouri's constitution states "that all persons are created equal and are entitled to equal rights and opportunity under the law." MO. CONST. art. I, § 2. The legislature may pass laws that treat different groups differently; however, similarly situated persons cannot

be treated differently without adequate justification. *Doe v. Phillips*, 194 S.W.3d 833, 845 (Mo. banc 2006).

The situation created by § 538.210, *Watts*, and *Sanders* is that wrongful death and medical negligence plaintiffs are treated differently under the noneconomic damage cap. Because the Missouri Supreme Court has not addressed this issue, it is a question of first impression, which is a "clear indication that a constitutional challenge is real and substantial and made in good faith." *Sharp*, 138 S.W.3d at 738. It is not for us to determine whether wrongful death and common law medical negligence plaintiffs are similarly situated, or what level of scrutiny should apply in equal protection analysis. Because Plaintiffs' claim regarding equal protection appears to be real and substantial, and not merely colorable, the Missouri Supreme Court has exclusive appellate jurisdiction. *Id.* at 735. Accordingly, this Court lacks jurisdiction and is without the power to address any other issue in the case. *Id.*

## Conclusion

Because we lack jurisdiction, we order the case transferred to the Missouri Supreme Court where jurisdiction lies.

_____
Philip M. Hess, Judge

Sherri B. Sullivan, P.J. and
Robert M. Clayton, III, J, concur.

13