

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| CATHARINE SUE CARTER AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DAVID CARTER (DECEASED), | ) ) ) ) ) ) | |
| Appellant-Respondent, | ) ) | **WD86558** |
| v. | ) ) | **Related Case: WD86559** |
| MISSOURI DEPARTMENT OF CORRECTIONS, | ) ) ) | **OPINION FILED: FEBRUARY 11, 2025** |
| Respondent-Appellant. | ) ) ) | |

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Marty Wayne Seaton, Judge**

**Before Division Four: Anthony Rex Gabbert, Chief Judge, Presiding,
Karen King Mitchell, Judge, Alisha D. O'Hara, Special Judge**

Catharine Sue Carter, as personal representative of the estate of David Carter

("Carter"),[1] appeals the circuit court's application of Section 213.111.4 after a jury

returned a verdict in Carter's favor, and awarded damages totaling $5,788,000 on his

Missouri Human Rights Act ("MHRA") claims against the Missouri Department of

---

[1] For ease of readership, because Catharine Carter was substituted in this matter for David Carter after his death, and all claims originated from David, the discussion herein will presume David continues to raise these claims.

Corrections ("MDOC").  Carter raises seven points on appeal.  In Carter's first point, he contends the circuit court's August 2023 amended judgments reducing his damages must be vacated, arguing they are void because the court did not have jurisdiction to amend its December 2022 judgment awarding Carter his full measure of damages.  In his second through seventh points, Carter contends the circuit court erred in capping his damages based on Section 213.111.4, arguing Section 213.111.4 is unconstitutional in that it, 2) violates art. 1 § 22(a) of the Missouri Constitution by impairing Carter's right to a jury trial; 3) violates the mandate for separation of powers in article II, § 1 of the Missouri Constitution by impermissibly interfering with the judiciary's role of determining the damages sustained by victims of discrimination; 4) violates the equal protection clauses of the Missouri Constitution (article I, § 2) and the U.S. Constitution (14th amendment) by denying him actual damages for his injuries; 5) violates the due process clauses of the Missouri Constitution (article I, § 10) and the United States Constitution (Amend. XIV, § 1) by depriving Carter of property without due process of law, 6) violates the open courts provision, article I § 14, of the Missouri Constitution, and 7) is a special law in violation of article III, §§ 40-42 of the Missouri Constitution.

MDOC cross-appeals contending the circuit court, 1) erred in denying MDOC's motion for judgment notwithstanding the verdict, arguing Carter failed to produce substantial evidence of each element of his hostile work environment based on disability claim, 2) erred in denying MDOC's motion for judgment notwithstanding the verdict, arguing Carter failed to produce substantial evidence of each element of his disability

2

discrimination claim, 3) erred in denying MDOC's motion for judgment notwithstanding the verdict, arguing Carter failed to produce substantial evidence of each element of his retaliation claim, and 4) erred in applying a 1.25 multiplier to its award of attorney fees to Carter, arguing Carter failed to establish he was entitled to that multiplier.

As discussed more fully below, we find that Carter's challenges to the constitutional validity of Section 213.111.4 invoke the exclusive appellate jurisdiction of the Missouri Supreme Court pursuant to Article V, § 3 of the Missouri Constitution. We, therefore, lack jurisdiction over Carter's appeal and MDOC's cross-appeal, and order the case transferred to the Missouri Supreme Court pursuant to Article V, § 11 of the Missouri Constitution.

### Background and Procedural Information

The underlying facts in this case are not essential to our ruling. Carter's explanation of the trial evidence is as follows. Carter began working for the MDOC in May 2017 as an electronics technician at the Kansas City Reentry Center. Carter was sixty-one years old when he began working for the MDOC. In 2018, Carter was diagnosed with shingles.

Carter's supervisor ("Supervisor") made comments to employees, in front of inmates, that Carter was social security, was working too slow, could not keep up, and generally berated him. Supervisor made fun of Carter's shingles, accused Carter of falsifying documents, called Carter lazy, issued Carter a log note, took away Carter's

work computer, denied Carter training to do the work Supervisor insisted Carter perform, and did not give Carter the tools needed to perform his job.

The deputy warden of operations ("Deputy Warden") was Supervisor's supervisor. Deputy Warden testified as both a fact witness and as MDOC's designated representative. As MDOC's representative, Deputy Warden testified that Supervisor created an offensive and hostile work environment for the people Supervisor supervised, including Carter. Deputy Warden explained that Supervisor engaged in harassment, including age-based harassment, "attack[ed] … a protected category of a person," and targeted anyone who complained about him.

Because of Supervisor's conduct, Deputy Warden submitted a Request for Investigation ("RFI") to the Warden in which Deputy Warden identified Carter as a victim of Supervisor's harassment. In the RFI, Deputy Warden notified MDOC that Supervisor's style of leadership is done with "bullying, intimidation and retaliatory tactics, which does nothing but create a hostile work environment." Deputy Warden reported that Supervisor kept staff, including Carter, in constant fear of losing their jobs. MDOC admitted it did not timely investigate the RFI or handle the complaints against Supervisor.

After Deputy Warden submitted the RFI, he held a meeting with Supervisor and the maintenance staff, which included Carter. At the meeting, Supervisor said to Carter and other members of the maintenance staff, and in front of Deputy Warden, that Supervisor was their supervisor, and "[Deputy Warden] or the warden cannot protect

4

you." Deputy Warden admitted that he, indeed, could not protect the staff from Supervisor and was not permitted to discipline Supervisor. Deputy Warden admitted that the policy of maintaining an environment free from discrimination, harassment, and retaliation was not fulfilled where Supervisor was concerned and MDOC's claimed zero-tolerance policy did not apply to Supervisor.

As a result of Supervisor's harassment, Carter's shingles were exacerbated which increased Carter's pain, caused trouble walking and standing, and made it difficult to lift things. Carter resigned in May 2019 because of the discrimination and harassment he endured. During the two years Carter worked for MDOC, Supervisor was never disciplined.

On May 28, 2019, Carter filed a petition alleging violations of the MHRA, Section 210.010, *et seq.*[2] On December 9, 2022, the jury returned verdicts in favor of Carter totaling $5,788,000, awarded as follows: $500,000 for non-economic damages for hostile work environment; $144,000 for back pay on Carter's discriminatory/retaliatory constructive discharge claim; $144,000 for future economic losses on Carter's discriminatory/retaliatory discharge claim, and; $5,000,000 for punitive damages.

On December 12, 2022, the circuit court entered judgment on the jury verdict for damages of $5,788,000. On July 10, 2023, the court entered a separate judgment awarding Carter attorneys' fees, and reiterated its December 12, 2022, "preliminary"

---

[2]All statutory references are to the Revised Statutes of Missouri, as updated through 2019, unless otherwise noted.

5

judgment awarding Carter $788,000 in actual damages and $5,000,000 in punitive damages. The court noted that, although the December 12, 2022, entry was titled "Judgment," the entry did not address Carter's claim for attorney's fees, litigation expenses, and interest, and was not a final judgment. The court stated that the July 10, 2023, judgment was a final judgment.

On August 29, 2023, the circuit court entered an Amended Judgment reducing the damages awarded in its December 12, 2022, judgment to $644,000. On August 31, 2023, the court entered a separate Amended Final Judgment specifically citing the damage cap set forth in Section 213.111.4(2)(d) as authority for reducing Carter's damages. Carter appealed to this court, and MDOC filed its cross-appeal. We consolidated MDOC's cross-appeal with Carter's appeal.

**Missouri Supreme Court Jurisdiction**

Carter raises constitutional claims that he contends are within the exclusive jurisdiction of the Missouri Supreme Court. He contends that his first point on appeal (regarding whether the circuit court had jurisdiction to enter the August 29, 2023, and August 31, 2023, Amended Judgments) is within this court's jurisdiction. MDOC contends this court has jurisdiction over MDOC's cross-appeal, as well as Carter's appeal, suggesting Carter's constitutional claims are "merely colorable." MDOC does not dispute that Carter's constitutional claims were preserved.

> Article V, § 3 of the Missouri Constitution provides that the Missouri Supreme Court has 'exclusive appellate jurisdiction in all cases involving the validity of a ... statute ... of this state.' The Supreme Court's 'exclusive

6

appellate jurisdiction is invoked when a party asserts that a state statute directly violates the constitution either facially or as applied.' *Dieser*, 498 S.W.3d at 427. "If any point on appeal involves such [a] question, the entire case must be transferred to the Supreme Court." *Accident Fund Ins. Co. v. Casey*, 536 S.W.3d 360, 364 (Mo. App. W.D. 2017) (citation omitted).

The Supreme Court's "exclusive appellate jurisdiction is not invoked," however, 'simply because a case involves a constitutional issue.' *McNeal v. McNeal-Sydnor*, 472 S.W.3d 194, 195 (Mo. 2015). 'To invoke the [Supreme] Court's exclusive jurisdiction, the constitutional issue must be real and substantial, not merely colorable.' *Matter of Care and Treatment of Bradley v. State*, 554 S.W.3d 440, 448-49 (Mo. App. W.D. 2018) (citations and internal quotation marks omitted); *accord*, *Boeving v. Kander*, 496 S.W.3d 498, 503 (Mo. 2016); *Mayes v. Saint Luke's Hosp. of Kansas City*, 430 S.W.3d 260, 270 (Mo. 2014).

> In determining whether a constitutional claim is real and substantial, we make a preliminary inquiry as to whether it presents a contested matter of right that involves fair doubt and reasonable room for disagreement. If the initial inquiry discloses the claim is so legally or factually insubstantial as to be plainly without merit, the claim may be deemed merely colorable.

*McCormack v. Capital Elec. Constr. Co.*, 159 S.W.3d 387, 404 (Mo. App. W.D. 2004) (citations omitted). "In the context of the 'not merely colorable' test, the word 'colorable' means feigned, fictitious or counterfeit, rather than plausible." *Dieser*, 498 S.W.3d at 429 (quoting *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 52 (Mo. 1999)); *Snodgrass v. Martin & Bayley, Inc.*, No. ED87304, 2006 WL 1735246, at *3 (Mo. App. E.D. June 27, 2006) (same).

"One clear indication that a constitutional challenge is real and substantial and made in good faith is that the challenge is one of first impression with th[e] [Supreme] Court." *Dieser*, 498 S.W.3d at 429 (quoting *Rodriguez*, 996 S.W.2d at 52); *accord Mayes*, 430 S.W.3d at 270.

*Donaldson v. Missouri State Bd. of Registration for Healing Arts*, 623 S.W.3d 152, 156

(Mo. App. 2020).

In Carter's second point on appeal, he contends the circuit court erred in capping

his damages based on Section 231.111.4, arguing Section 231.111.4 is unconstitutional

because it impairs his right to a jury trial.

In 2017, the Missouri legislature passed Senate Bill 43, which amended the

MHRA. *Dixson v. Missouri Dept. of Corrections*, 586 S.W.3d 816, 825 (Mo. App. 2019).

Senate Bill 43's damage cap is codified in Section 213.111.4, which provides:

> 4. The sum of the amount of actual damages, including damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and punitive damages awarded under this section shall not exceed for each complaining party:
>
> (1) Actual back pay and interest on back pay; and
>
> (2)(a) In the case of a respondent who has more than five and fewer than one hundred one employees in each of twenty or more calendar weeks in the current or preceding calendar year, fifty thousand dollars;
>
> (b) In the case of a respondent who has more than one hundred and fewer than two hundred one employees in each of twenty or more calendar weeks in the current or preceding calendar year, one hundred thousand dollars;
>
> (c) In the case of a respondent who has more than two hundred and fewer than five hundred one employees in each of twenty or more calendar weeks in the current or preceding calendar year, two hundred thousand dollars; or
>
> (d) In the case of a respondent who has more than five hundred employees in each of twenty or more calendar weeks in the current or preceding calendar year, five hundred thousand dollars.

Citing *Watts v. Lester E. Cox Medical Centers*, 376 S.W.3d 633, 637 (Mo banc 2012), Carter argues that Section 213.111.4's damages cap, which caps actual as well as punitive damages, implicates his right to trial by jury under article I, § 22(a) because his claims fall within the "right of a trial by jury as heretofore enjoyed," and because Carter's right to a trial by jury cannot "remain inviolate" when a statutory cap limits damages. Carter contends that *Diehl v. O'Malley*, 95 S.W.3d 82, 85 (Mo. banc 2003), which discussed that "[a]n action for damages under the Missouri Human Rights Act seeks redress for an intentional wrong done to a person … and is a modern variant of claims for relief, called forms of action, known to the courts in 1820 for redress of wrongs done to a person," confirms that his claims fall within the "right of a trial by jury as heretofore enjoyed."

Citing *Scott v. Blue Springs Ford Sales, Inc.*, 176 S.W.3d 140, 142 (Mo. banc 2005), Carter argues that, there is no question that actual damages were recognized under the common law in 1820, and juries could assess punitive damages for common law tort claims as well. Carter quotes *All Star Awards & Specialties, Inc. v. HALO Branded Solutions, Inc.*, 642 S.W.3d 281, 287 (Mo. banc 2022), which states that "statutory caps on punitive damages violate the right to a trial by jury as provided by article I, section 22(a) if the litigant's common law cause of action existed in 1820 and the claim would have supported a finding of punitive damages in 1820," or if the "common law cause of action is 'analogous' to a claim that existed in 1820 and the claim would have supported a finding of punitive damages in 1820." Carter argues that, if the statutory cap changes the

9

common law right to a jury determination of damages, the right to trial by jury does not "remain inviolate," and it is undeniable that Section 213.111.4 changes the common law right to a jury determination of damages. Carter concludes that, given the law as applied to the facts in his case, Section 213.111.4 is clearly and undoubtedly unconstitutional.

MDOC counters that Carter ignores that, in this case, the MHRA is a waiver of the State's sovereign immunity permitting claims and recovery against the State that were otherwise barred at common law. MDOC then argues that, although the MHRA waives immunity for certain claims against the State brought under the act, waivers of immunity must be strictly construed.[3] Further, even if Carter is correct that the damages caps are unconstitutional *in general*, he cannot show the legislature waived the State's immunity from suit beyond those caps.

MDOC also argues that Carter's claims are statutorily created causes of action which entitle the legislature to choose all remedies for those causes of action, and the cases cited by Carter in support of his arguments are inapplicable and distinguishable because they involved common law claims, and not statutory claims.

"The fact that [Carter] raises issues of first impression in Missouri indicates that he has raised 'real and substantial' constitutional claims." *Donaldson*, 623 S.W.3d at 159 (quoting *Mayes*, 430 S.W.3d at 270). Carter's claims and arguments, and MDOC's

---

[3] Carter counters in his reply brief that, MDOC's sovereign immunity argument is misplaced as the MHRA applies to both private and public entities, and the differential treatment proposed by MDOC has been rejected in *Jones v. City of Kansas City*, 569 S.W.3d 42, 57 (Mo. App. 2019).

arguments in opposition, "involve fair doubt and reasonable room for disagreement, and they do not appear so legally or factually insubstantial that we can say they are merely colorable." *Donaldson*, 623 S.W.3d at 159. While the Missouri Supreme Court may have addressed similar constitutional claims regarding other statutes, where there is a genuine, good faith disagreement as to how those decisions apply to the constitutionality of Section 213.111.4, we cannot conclude the issues raised by Carter are merely colorable. *See Mayes*, 430 S.W.3d at 270.

## Conclusion

Carter's constitutional claims invoke the Missouri Supreme Court's exclusive appellate jurisdiction under Article V, § 3 of the Missouri Constitution. Accordingly, we lack jurisdiction over this appeal, and the case must be transferred to the Missouri Supreme Court. Carter's appeal, along with the MDOC's cross-appeal, is ordered transferred pursuant to Article V, § 11 of the Missouri Constitution.[4]

_____
Anthony Rex Gabbert,
Chief Judge

All concur.

_____

[4] While Carter's first point on appeal raises an issue that does not invoke the exclusive jurisdiction of the Missouri Supreme Court, and none of MDOC's points on cross-appeal invoke the exclusive jurisdiction of the Missouri Supreme Court, the Missouri Supreme Court has previously stated that, where "one of the issues involves the validity of a statute, the Court has jurisdiction of the entire case." *Lester v. Sayles*, 850 S.W.2d 858, 861 (Mo. banc 1993). Further, if the Missouri Supreme Court were to conclude that Section 213.111.4 is unconstitutional, Carter's first point (which claims the circuit court lacked jurisdiction to amend its judgment, thereby rendering the court's reduction of damages pursuant to Section 213.111.4 void) would then be moot.

11